**M.W. HAUN, Appellant,**

v.

**Tommy STEIGLEDER, Appellee.**

No. 04–92–00698–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 15, 1993.

Rehearing Denied Dec. 15, 1993.

David D. Towler, Law Offices of Royal D. Adams, San Antonio, for appellant.

Raymond S. De Leon, II, Flowers, Davis & Le Grand, San Antonio, for appellee.

Before BUTTS and BIERY, JJ., and GERALD T. BISSETT, Assigned Justice[1].

## OPINION

GERALD T. BISSETT, Assigned Justice.

### ON APPELLANT'S MOTION FOR REHEARING

This opinion of this Court heretofore filed and delivered on August 18, 1993, is withdrawn and this opinion is substituted therefor and is the opinion of this Court.

M.W. Haun, defendant in the trial court (hereafter "appellant"), appeals from a summary judgment in favor of Tommy Steigleder, plaintiff in the trial court (hereafter "appellee"), wherein it was ordered and decreed that the judgment heretofore rendered on September 28, 1984, in Cause No. 84–CI–00162, in the 285th District Court, Bexar County, Texas, (hereafter "Cause No. 84–CI–00160") be enforced against appellant. We affirm.

This is a suit brought by appellee on October 25, 1989 against appellant. South Texas Sports, Inc. attempted to file a supersedeas bond in relation to the appeal by it of the judgment in Cause No. 84–CI–00162. The District Clerk of Bexar County refused to file or accept the bond, however, the appellee brought this separate suit against the sureties on the bond, Clinton Manges and appellant. Clinton Manges was the subject of a Chapter 11 Bankruptcy and has been severed out of this case by the trial court.

Appellee brought this action in his capacity as a judgment creditor seeking to recover satisfaction of a Bexar County trial court judgment which was rendered in his favor on September 28, 1984 against South Texas Sports, Inc., d/b/a San Antonio Gunslingers.

On October 24, 1984, the defendant filed his motion for new trial, in Cause No. 84–CI–00162, which was overruled by operation of law. Shortly thereafter, the defendant desired to appeal to the Court of Appeals, and on December 26, 1984, it filed with the Clerk of the District Court of Bexar County a "Direction to the Clerk for Preparation of Transcript," which requested the clerk of said Court to prepare a true copy of the proceedings in the trial court. Additionally, the attorney for the defendant delivered to appellee's counsel a copy of the supersedeas bond.

On February 28, 1986, the Court of Appeals affirmed the judgment of the trial court in favor of the appellee. The Court of Appeals' decision was appealed to the Supreme Court which affirmed the Court of Appeal's decision by refusing the Application for Writ of Error, n.r.e. on June 18, 1986. The mandate of the Court of Appeals was issued on July 30, 1986. To date, appellee's judgment has yet to be satisfied and, consequently, the appellee brought this lawsuit to collect the judgment.

Appellee filed a motion for summary judgment in the instant case, Cause No. 89–CI–18234, in the trial court, on July 10, 1991, and appellant filed a response on July 24, 1991. After a hearing, the trial court granted appellee a summary judgment on August 15, 1991.

Appellant asserts three points of error in his brief. He contends that the court erred in granting the summary judgment because: 1) the summary judgment evidence provides no legal basis for appellee's recovery; 2) there were disputed issues of material fact which prevented the rendition of the summary judgment; and 3) the judgment awards appellee a greater amount than was justified.

As before stated, on or about September 28, 1984, appellee in the instant case recov-

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

ered a judgment in the amount of $50,250.00 plus interest thereon "at the rate of 10.79%" until paid against South Texas Sports, Inc. in Cause No. 84–CI–00162. Appellant was the President of South Texas Sports, Inc. He did not then, nor did he ever, own any interest in that corporation. He did not take an active role in the litigation of Cause No. 84–CI–00162, on which appellee's claim is based. That litigation was handled by Clinton Manges, the owner of South Texas Sports, Inc.

Appellant, on or about December 21, 1984, at the request of Clinton Manges, signed, as surety a document entitled "Supersedeas Bond" which was tendered to the District Clerk of Bexar County for filing. The Clerk refused to approve or file it.

A copy of the "Supersedeas Bond" was mailed by counsel for South Texas Sports, Inc., acting by Clinton Manges, the principal, but the form for approval by the district clerk was left blank. Appellee was not informed by anyone that the district clerk refused to approve or file the "Supersedeas Bond," and he made no attempt to obtain execution of the trial court's judgment in Cause No. 84–CI–00162 during the pendency of the appeal by South Texas Sports, Inc.

Appellant contends in his first point of error that as a matter of law appellee was not entitled to recover from him on the bond because: 1) it was not approved by the District Clerk of Bexar County; 2) it was never filed; and 3) it never operated as an impediment to appellee's enforcement of the judgment in Cause No. 84–CI–00162. He argues that it is fairly well settled in Texas that while sureties on a supersedeas bond which is invalid may nevertheless be held liable thereon, when such bond accomplishes the purpose for which it was intended by procuring for the principal obligor on the bond a stay of execution. Appellee has not shown the critical element of "procuring for the principal obligor on the bond a stay of execution."

The bond in question provides in relevant part:

WHEREAS, Defendant desires to suspend execution of said Judgment pending determination of such appeal:

NOW, THEREFORE, we, South Texas Sports, Inc. and Principal and, Clinton Manges, of Freer, Duval County, Texas and M.W. Haun, of San Antonio, Bexar County, Texas, as Sureties, acknowledge ourselves bound to pay to Tommy Steigleder, Appellee, the sum of Fifty-eight Thousand and No/100 ($58,000.00) Dollars, said sum being at least the amount of the Judgment, interest, and costs, plus interest at the rate of 10.97 percent per annum on the sum of Fifty-two Thousand Two Hundred Forty–Five and No/100 ($52,245.00) Dollars from the date of the Judgment until final disposition of the appeal, conditioned that Appellant shall prosecute the appeal with effect; and in case the Judgment of the Supreme Court or the Court of Appeals shall be against him, he shall perform its Judgment, sentence or decree, and pay all such damages as the Court may award against him.

Appellant also contends that before he can be held liable on the bond, there must be a "judgment of the Supreme Court or the Court of Appeals" against him, and that there is no such judgment against him. Therefore, it is claimed by appellant that "even assuming that appellee has stated a common law action against him on the bond, the facts of their case simply do not trigger liability on the bond."

Finally, appellant contends that the bond cannot be enforced against him because, although it was signed by him as a surety, it was never delivered to the District Clerk of Bexar County with the intention that it become operative; consequently, the bond never became effective as a common law obligation. We do not agree. The bond was signed by South Texas Sports, Inc., as principal, and Clinton Manges and appellant as sureties, and the original bond was delivered by the attorney for South Texas Sports, Inc. to the District Clerk of Bexar County, Texas, for filing. There is nothing in the record which indicates that appellant had no intention that the bond was not to become operative.

Part of appellee's summary judgment evidence consisted of affidavits of Howard E. Davis and Richard N. Francis, who were

attorneys for appellee in the aforesaid lawsuit against South Texas Sports, Inc. (Cause No. 84–CI–00162).

Each stated in his affidavit in relevant part:

A verdict was rendered in favor of the Plaintiff, Tommy Steigleder, and a judgment was signed on the 28th day of September, 1984.

On the 29th day of October, 1984, the defendants filed a Motion for New Trial and that motion was overruled by operation of law on December 13, 1984. The defendants' attorney, Richard Neville, desired to appeal this cause to the Court of Appeals and on December 26, 1984, the defendants filed with the Court a Direction to the Clerk for Preparation of Transcript, which requested the Clerk to prepare the trial court transcript and further asked the court to include the Supercedeas (sic) Bond.

The Direction of the Clerk for Preparation of Transcript along with a Supersedes (sic) Bond, which were prepared by the defense attorney and signed by the Defendants were sent to me at my office. . . . Upon review of the above documents I noted in the transcript request that it stated that the Supersedeas Bond was filed by Defendant/Appellant, South Texas Sports, Inc.

The affidavits were not challenged or objected to by appellant.

In *Lloyds Casualty Insurer v. Farrar*, 141 Tex. 497, 174 S.W.2d 302 (1943), Lloyd signed as a surety on an additional supersedeas bond. The Clerk of the Court of Appeals refused to approve and file same. The appellant then filed in the Supreme Court a petition for mandamus to compel the Clerk to file the tendered bond and to stay any execution pending the Supreme Court's ruling on the petition for mandamus. Thereafter, the Court of Appeals decided the underlying case on the merits and affirmed the judgment of the trial court and shortly thereafter, upon motion of the appellant, the mandamus petition pending before the Supreme Court was dismissed. Farrar, one of the sureties on the original supersedeas bond, filed suit against Lloyds as "additional surety" since Lloyds

had voluntarily executed the additional supersedeas bond. The question for the Texas Supreme Court to decide in that case was whether the liability of Lloyds, as surety on the additional unapproved supersedeas bond, ever attached. The Court answered the question in the affirmative and in doing so, stated:

The many authorities upon the question before us establish the general rule to be that sureties on a supersedeas bond which is invalid as such may nevertheless be held liable thereon when such bond accomplishes the very purpose for which it was intended by procuring for the principal obligor on the bond a stay of execution.

174 S.W.2d at 303–04.

It was held in *Clay v. Richardson*, 9 S.W.2d 413, 416 (Tex.Civ.App.—Fort Worth 1928, writ ref'd) cited by the Supreme Court in *Farrar* at 304, that although no authority in law existed for the execution of a supersedeas bond to stay the operation of a permanent injunction, such bond was valid and binding as a common law obligation if the full benefit of a suspension of the affected judgment was obtained.

Additionally, the Court stated that the sureties on the bond "[h]aving received the full benefit of a suspension by executing the bond, they are in no position now to say that they are not bound by the plain provisions thereof. . . ." *Id.* at 416.

■ Appellant's contention that he is not liable on the bond because appellee did not prove "the critical element of procuring for the principal obligor on the bond a stay of execution" has no merit. It is definitely established by the summary judgment evidence that South Texas did prosecute the appeal of the judgment in Cause No. 84–CI–00162 with effect and that the judgment was upheld by the Court of Appeals and the Supreme Court. All of the conditions triggering appellant's liability on the bond had occurred prior to the time that appellee filed the instant suit.

The court of appeals in *Carter Real Estate & Dev., Inc. v. Builder's Serv. Co.*, 718 S.W.2d 828 (Tex.App.—Austin 1986, no writ),

dealt with exactly this same issue and ruled against the surety holding it liable under the bond. Carter dealt with a situation where the principal obligor on a supersedeas bond filed a petition for bankruptcy. The issues were whether the sureties on a supersedeas bond are themselves liable for the same debt as the principal obligor on such bond, and whether the principal obligor discharge would not affect the liability of the sureties for that debt.

The *Carter* court held that in the case of a bond such as supersedeas bond, the surety's undertaking is simply an express contract that the surety will, failing a reversal, pay the judgment recovered against the appellant in the trial court. *See Carter*, 718 S.W.2d at 830. The judgment creditor can recover from the surety based on his contractual promise, or from the judgment debtor as principal. *Trent v. Rhomberg*, 66 Tex. 249, 18 S.W. 510 (1886).

We hold that appellant is liable on the bond voluntarily executed by him in this case. While the supersedeas bond was invalid as such, nevertheless appellant, as a surety thereon, is liable thereon because of a common law obligation. The fact that the district clerk did not approve the bond did not affect its validity as a common law obligation. More specifically, because of the voluntary execution by appellant of the bond, South Texas Sports, Inc., the principal obligor of the bond, obtained a stay of execution of the judgment which had been rendered against it just as completely and effectively as if said bond had been approved and marked filed by the district Clerk of Bexar County. The summary judgment evidence established the elements of a cause of action against appellant as a matter of law. Appellant's first point of error is overruled.

Next, we consider the question of disputed issues of material fact. Appellant contends that there are three areas where there were disputed issues of material fact which prevented the rendition of summary judgment in favor of appellee, to-wit: 1) whether any reliance placed by appellee on the bond was justified, and whether any damages resulting from the failure to file the bond were proximately caused by the negligence of appellee's

attorney; 2) whether any acts on which appellee may have relied were performed by appellant or his attorney or agent; and 3) whether appellant has been released from any obligation on the bond, if he ever had any, because the bond was never approved by the district clerk or filed.

Appellant argues in support of his contention that the issue as to whether any reliance by appellee was justified, and the issue of the negligence of appellee's attorney, are both disputed fact issues as evidenced by the affidavits of Davis and Francis (attorneys for appellee), which stated in relevant part:

Having received the transcript request and bond I relied upon the bond having the effect of suspending the execution of the trial court judgment during the pendency of the Defendants' appeal as was required of the Plaintiff under the laws of the State of Texas.

and by the affidavit of Pete Tijerina, an attorney, who stated in relevant part:

In my opinion as an attorney, it is not reasonable for an attorney to rely on the representation of opposing counsel that a supersedeas bond had been filed and approved, and based on that to delay execution on a judgment. A reasonably prudent attorney should either obtain a file-stamped copy of a supersedeas bond reflecting the approval of the District Clerk, or should inspect the court's file to assure that a supersedeas bond was, in fact, filed and approved.

It is appellant's position in this appeal that if appellee is proceeding on the theory that he was somehow misled by Direction to the Clerk for Preparation of Transcript, which contained a reference to a "Supersedeas Bond filed by Defendant/Appellant South Texas Sports, Inc.," the summary judgment evidence before the Court establishes at least a fact question as to whether any reliance on that by appellee was reasonable. And, further, because Cause No. 84–CI–00162 was appealed, the transcript was undoubtedly checked out by appellee and appellee was therefore on notice that the supersedeas bond had never been approved or filed. This is pure speculation by appellant.

Concerning the contention that a fact issue existed as to whether any acts on which appellee may have relied on were performed by appellant or his attorney or agent, appellant relies on his own affidavit in which he stated that he has "never been represented as an attorney, agent, or otherwise by Richard F. Neville, III or the Law Offices of Maloney & Maloney, (the attorneys for South Texas Sports, Inc., in Cause No. 84–CI–00162), nor did [he] ever ask them to prepare the Supersedeas Bond or the Direction to Clerk for Preparation of Transcript alleged by Plaintiff." He further argues that in the event that appellee is claiming that Richard F. Neville's designation was an act by appellant's agent which misled appellee, there is at least a fact question as to whether Richard F. Neville was, in fact, appellant's agent or attorney. There is nothing in the record which indicates that Richard F. Neville was, at any time, appellant's agent or attorney.

With respect to appellant's contention that there was a fact issue as to whether he had been released from any obligation on the bond because it had never been approved by the district clerk of filed, he says:

"In reasonable reliance on the rejection by the District Clerk of the Supersedeas Bond, Appellant performed several acts which he would not have had he known that Appellee would attempt to hold him liable on the rejected Supersedeas Bond." Appellant stated in his affidavit:

> During the intervening time between the rejection of the supersedeas bond and the service of this suit, in reliance on my belief of the invalidity of the supersedeas bond, I continued to advance money and devote my time, uncompensated, to South Texas Sports, Inc. and Clinton Manges. Had I known that I may have any exposure on the supersedeas bond, I would not have done so. In addition, I would have exerted more pressure on Clinton Manges to make some arrangement for the satisfaction of this judgment.

Appellant also asserts that disputed fact issues existed as to whether appellee suffered any detriment by virtue of their contract, whether there was any consideration by appellee for the bond, and whether appellant was ever obligated to appellee for the bond. He first argues that the South Texas Sports Judgment was never superseded and could have been enforced by appellee at any time, and that because enforcement of the judgment was not suspended, appellee has not shown any "damages occasioned by the appeal" which would constitute consideration for the bond as a common law obligation. We disagree.

As to whether a fact issue existed regarding whether appellant was obligated to appellee on the bond, appellant argues that there was not sufficient summary judgment evidence to support a judgment on that theory "because such contract was at all times the sole obligation of South Texas Sports, Inc." Again, we disagree.

The Texas Rules of Civil Procedure state that in order for a movant to prevail on motion for summary judgment the court must find that "except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion...." TEX. R.CIV.P. 166a(c).

The Supreme Court of Texas held in *Lloyds Casualty Insurer v. Farrar*, 141 Tex. 497, 174 S.W.2d 302 (1943), which has already been discussed in some detail, that any transactions between the principal and the surety of their bond were sufficient to create a contract as between them and they cannot have any effect on the question regarding liability of the surety. Moreover, the Court stated that appellant did not withdraw the bond nor indicate to appellee that it was no longer considering itself liable as a surety on the bond, but rather permitted the bond to remain in the hands of the appellee. That is what happened in the instant case.

■ In the case at bar, appellant voluntarily executed the bond. It was by the attorney for South Texas Sports, Inc., the principal obligor on the bond, to appellee's attorney, who stated in the "Direction to Clerk for Preparation of Transcript" that said supersedeas bond was "filed by Defendant/Appellant South Texas Sports, Inc." It was conclusively shown by the summary

judgment evidence that he was able to procure a stay of execution of the judgment rendered against it just as completely and effectively as if said bond had been approved and marked filed by the district clerk of Bexar County. Further, appellant's contention that it continued to advance money to South Texas Sports is without legal effect. The *Farrar* court stated that "[s]ecret understandings between the principals and surety cannot operate to alter the legal effect of the bond." *Id.* 174 S.W.2d at 305.

■ As a matter of law, sufficient consideration to support a bond of this nature as a common law obligation is the detriment to the appellee resulting by the bond achieving its intended purpose, a stay of execution.

Appellant's contentions that appellee did not suffer any detriment by virtue of the bond and that there was not any consideration for the bond cannot be sustained under the holding in *Farrar*. Simply stated, the *Farrar* court held that

> A sufficient consideration to support a bond of this nature as a common law obligation is the detriment resulting therefrom to the obligees. That detriment results when the bond achieves its intended purpose. There need be no acceptance of the bond by the obligees in the sense that private contracts are accepted. The controlling fact is that the obligees suffer a detriment thereby.... While the obligees are the beneficiaries in supersedeas bonds, still such bonds are not submitted to them for their acceptance or rejection.

*Id.* 174 S.W.2d at 305–06.

In applying the above rule of law to the instant case, it becomes obvious that South Texas Sports, Inc., the principal obligor, by voluntarily executing the supersedeas bond with appellant as one of the sureties, was able to procure a stay of execution during the pendency of the appeal, which was the sole purpose for which the bond was executed. The fact that the bond was not approved by the district clerk did not affect its validity as a common law obligation under these circumstances. Appellant was at all times obligated to appellee on the contract alleged by appellee. Such obligation was at all times the joint obligation of principal and surety.

■ Contrary to appellant's position that he was not obligated to appellee on the alleged contract, the Texas Business and Commerce Code defines a "surety" to include an "[E]ndorser, guarantor, drawer of a draft which has been accepted, and every other form of suretyship, whether created by express contract or by operation of law." TEX.BUS. & COM.CODE ANN. § 34.01 (Vernon 1987). Appellant, by endorsing his name under the surety column of the bond, created an obligation to appellee on the bond to pay appellee the judgment upon completion of appeal, since South Texas Sports, Inc. did not prevail in the appeal of Cause No. 84–CI–00162.

Texas law clearly states that one who endorses his name on an obligation as a surety, undertakes to be answerable for the payment of some debt of another person, who himself remains liable. *Cook v. Citizens Nat'l Bank of Beaumont*, 538 S.W.2d 460 (Tex.Civ. App.—Beaumont 1976, no writ), *overruled on other grounds, Ferguson v. McCarrell*, 588 S.W.2d 895 (Tex.1979).

The fact that the District Clerk did not approve the bond did not affect its validity under the summary judgment evidence in this case, and appellant's liability as a surety thereon, as a matter of law, continued to exist regardless of whether the district clerk approved the bond. There are no disputed issues of facts of probative value which prevented the rendition of the summary judgment in favor of appellee and against appellant. Speculation by an affiant in his affidavit does not constitute summary judgment evidence. Appellant's second point of error is overruled.

■ Appellant claims in his third point of error that the summary judgment was for a greater amount than was justified. He says that his liability on the bond, "if he has any," is limited to $58,000. The amount due on July 30, 1986, the date of the court of appeals mandate is $60,658.62, computed as follows:

| | |
|---|---|
| Date of Judgment amount | $50,250.00 |
| Interest through 7/30/86 | $10,408.62 |
| Total due on issuance of mandate | $60,658.62 |

The order on appellant's motion for summary judgment (signed on August 15, 1991) states no specific amount awarded against appellant. It simply provides that "the Judgment theretofore entered on the 28th day of September, 1984 . . . be enforced. . . ."

Appellee contends that the appellant's liability under the supersedeas bond is exactly what it stated in the bond that the appellant signed. The amount to be paid to appellee changes daily because of the interest rate charged, and therefore it is undeterminable at the time of this appeal. The exact amount due on the base will be determined at the time appellant pays appellee the amount of money computed as of date of payment. The total amount due on the day that summary judgment was rendered was considerably more than $58,000.00. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.